UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Michael Afremov<br><br>    Plaintiff,<br><br>v.<br><br>Artur Jarayan, and<br>Object of Vertu, LLC,<br><br>    Defendants and Third-<br>    Party Plaintiffs<br><br>v.<br><br>John Atzbach,<br><br>    Third Party Defendant. | Case No. 11-CV-00313 SRN/SER<br><br>**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER FOR JUDGMENT** |

Andrew H. Bardwell, Skolnick & Shiff, PA, 527 Marquette Avenue South, Suite 2100, Minneapolis, Minnesota 55402, for Plaintiff

Sandra K. Kensy, 5430 Carlson Road, St. Paul, Minnesota 55126, for Third-Party Defendant John Atzbach

No Appearance on Behalf of Defendants and Third-Party Plaintiffs, Artur Jarayan and Object of Vertu, LLC

The above-entitled matter came on before the Honorable Susan Richard Nelson on October 24, 2012, pursuant to Plaintiff's Motion for Partial Summary Judgment [Doc. No. 128] and on his Motion for Default Judgment [Doc. No. 141]. The Court has previously ordered the clerk to enter default against Defendants pursuant to Fed. R. Civ. P. 55(a) [Docket No. 135].

Based on the files, the motion papers and records submitted by the parties, and the arguments of counsel, the Court makes the following:

**FINDINGS OF FACT**

1.  Plaintiff Michael Afremov is a resident of St. Louis Park, Minnesota. (Defendants' Counterclaim ¶ 58) [Docket No. 27].

2.  Defendant Artur Jarayan is an adult citizen of the Country of Armenia who has travelled to and done business in the United States and maintained a place of business in Pennsylvania. (See Defendants' Amended Answer ¶¶ 3, 4) [Docket No. 58]. Jarayan has conducted business through several entities, including Eastern European Art Gallery, Inc. and Defendant Object of Vertu, LLC, which he acknowledges are not distinguishable from him personally with respect to his transactions with Plaintiff. (Defendants' Counterclaim ¶ 10) [Docket. No. 27].

3.  Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000. The Defendants did not contest jurisdiction or venue and in fact asserted affirmative claims for relief. [Docket Nos. 27 and 58].

**BREACH OF CONTRACT AND FRAUD**

4.  In the spring of 2008, Defendant Jarayan proposed to Afremov the opportunity to develop a casino in Armenia. (Depo. of Jarayan, pp. 102-103).[1] Afremov expressed some interest in investing in the project, and shortly thereafter Jarayan began pressuring him to invest quickly. (Depo. of Afremov, pp. 74-76). Jarayan insisted they needed to act fast to secure land for the casino. (Id.).

---

[1] Unless otherwise stated, all deposition pages cited in these Findings appear as exhibits to either the Affidavit of William R. Skolnick dated May 22, 2012 [Docket Nos. 73 and 73-1] or the Second Supplemental Affidavit of William R. Skolnick dated September 12, 2012 [Docket Nos. 131 and 131-1].

2

5. At Jarayan's insistence, on or about July 2, 2008, Afremov wired $1.72 million to purchase real estate in Armenia for the casino project, which is what Jarayan represented the land would cost. (Depo. of Jarayan, p. 112; Second Supplemental Affidavit of Skolnick, Ex. 1).

6. Thereafter, Jarayan claimed he needed more money to purchase additional land on which they would build a hotel to adjoin the casino. (Depo. of Jarayan, p. 169). Jarayan again claimed they had to act quickly or risk losing the land. (Id., at 169-70). Afremov then provided an additional $625,000 to Jarayan on October 9, 2008, $470,000 of which Jarayan claimed was the purchase price of the additional land, with the balance for purported expenses of the casino project (Id., at 115; Second Supplemental Affidavit of Skolnick, Ex. 2).

7. Afremov therefore provided a total of $2,345,000 to Jarayan for the casino project, $2,190,000 of which Jarayan represented was needed for the purchase of the real estate in Armenia. (Id., at 116).

8. In October 2008, Afremov and Jarayan formed AM Plaza, LLC to own the Armenian land and develop the casino. (See, generally, Agreement of AM Plaza, LLC (the "LLC Agreement").[2] Pursuant to the LLC Agreement, the funds Afremov advanced for the purchase of real estate were to be treated as a part of his initial capital contribution to the LLC. (Id., at §4.1(a)(i). Any further contributions by Afremov were to be made "in amounts and at such times as mutually agreed between Afremov and the Company." (Id., at §4.1(a)(ii))(emphasis added).

9. The LLC Agreement required Jarayan, named as the manager of the LLC, to transfer title to the Armenian real estate that had been purchased with Afremov's funds to the company. (Id., at §§5.4(b), 6.1).

---

[2] The LLC Agreement appears in the record as Exhibit 1 to the Affidavit of William R. Skolnick dated May 22, 2012. [Docket Nos. 73 and 73-1].

10.     The LLC Agreement also required Jarayan to maintain accurate books of account for the LLC showing "all costs and expenses incurred, all charges made, all credits made and received and all income derived in connection with the operation of the Company business in accordance with generally accepted accounting principles consistently applied." (LLC Agreement, §8.1(a)). Jarayan admits that not only did he neglect to maintain these required financial records, but that he does not even know what generally accepted accounting principles are. (Depo. of Jarayan. p.153).

11.     Jarayan was required by the LLC Agreement to keep Afremov informed as to the business of the LLC by providing monthly financial reports via email. (LLC Agreement, §6.6). Although Jarayan claimed that he provided some reports to Afremov, he was unable to produce any such financial statements in this litigation. (Depo. of Jarayan, pp. 151-52; Affidavit of William R. Skolnick dated May 22, 2012, ¶7).

12.     Under the LLC Agreement, Defendant Object of Vertu, one of Jarayan's wholly owned entities, was the "Tax Matters Member," and Jarayan guaranteed the performance of Object of Vertu. (LLC Agreement, §§6.7, 9.3(a)). Jarayan admits that the Defendants never prepared or filed any tax returns. (Depo. of Jarayan, p. 145).

13.     Under the LLC, Jarayan covenanted to obey, and to cause any person acting for the LLC to obey, all laws of the United States and Armenia to ensure compliance with the Foreign Corrupt Practices Act and to certify the compliance in annual reports. (LLC Agreement, §5.3(a-c)). However, on April 7, 2009, Jarayan sent Afremov an email listing expenses of $50,000 as "GIFTS FOR land PERMITS(LOCAL GOVERNOR, CITY MAYOR, STATE MINISTER, VILAGE MAYOR)," which appear to have been illegal bribes. (Affidavit of William R. Skolnick dated May 22, 2012, Ex. E) [Docket Nos. 73 and 73-1]. At his deposition, Jarayan claimed that the only gifts were flowers and chocolates given to secretaries, not the

4

officials listed in the email, and that the bulk of the $50,000 went to other expenses such as satellite photographs of the land purchased for the casino project. (Depo. of Jarayan, pp. 128-36). This explanation is not credible because Jarayan failed to produce any receipts to document the purported expenditures of $50,000, nor did he produce the supposed satellite photos. (Affidavit of William R. Skolnick dated May 22, 2012, ¶8).

14. Jarayan never made the required real estate transfer to AM Plaza LLC and continues to own the Armenian land in his name. (Depo. of Jarayan, pp. 178-79; see also Affidavit of William Skolnick dated July 10, 2012, Ex. 3) [Docket Nos. 84 and 84-1].

15. Jarayan is unable to account for the $2.19 million that Afremov gave him for the purchase of the property. Jarayan claims that he transferred Afremov's funds to an acquaintance named Gurgen Kostanyan, whom he had known for only a short period of time, to buy the property. (Jarayan Depo. pp. 115-16, 157-62). How Jarayan selected Kostanyan, and what Kostanyan's qualifications were for locating and purchasing real estate are unknown. (Id., at pp.104-05).

16. Jarayan does not know from whom Kostanyan purchased the land or what he paid for it. (Id., at 160). Jarayan's knowledge of the purchase price is based only on what Kostanyan told him; he has not seen any supporting evidence whatsoever. (Id., at p. 158).

17. Even after being accused of fraud in this action, Jarayan claims that he has taken no steps to obtain documents that would show the actual purchase price of the land. (Id., at p. 162).

18. Plaintiff made diligent but unsuccessful attempts to obtain the documents from Jarayan. (See Affidavit of William R. Skolnick dated July 10, 2012, Exs. 1-6) [Docket Nos. 84 and 84-1].

19. Eventually, Plaintiff retained an Armenian attorney, Edward A. Mouradian, in an attempt to obtain documents and to explore certain other areas of Armenian law. (Id.). Among other things, Mr. Mouradian confirmed that documentary evidence of the purchase price would have been created and retained by Armenian public officials but that such documents are confidential and can be obtained only by an owner or party to the transaction. (Id., Ex. 3 (Report of Edward Mouradian)). Accordingly, as the owner of the property Jarayan could have obtained these documents, but Afremov, as a stranger to the transaction, could not. (Id.).

20. In addition to his failure to produce documentation of the Armenian real estate transactions, Jarayan disclosed Kostanyan's name in his answers to interrogatories but failed to include an address or other contact information. Plaintiff's counsel sought to depose Kostanyan regarding his alleged role in the land purchases but was unable to do so because Jarayan could not or would not provide contact information. (See Affidavit of William R. Skolnick dated May 22, 2012, Ex. F) [Docket Nos. 73 and 73-1].

21. Based on Jarayan's failure to produce any evidence that would dispel Plaintiff's allegations of fraud, Plaintiff brought a motion to appoint a receiver to take control of AM Plaza, LLC and liquidate its assets. [Docket. No. 70]. In granting Plaintiff's motion, this Court stated, "Given Jarayan's utter lack of accountability for his actions in the face of his clear fiduciary obligations, Afremov raises a genuine concern that Jarayan committed fraud by failing to use the funds Afremov contributed to the Casino Project to purchase land in Armenia." [Docket No. 88, p. 5]. Accordingly, the Court granted the motion and appointed a receiver. [Id. at pp. 7-12].

22. Since the Court's appointment of the receiver, Jarayan has not produced any documents or other evidence that would temper the Court's conclusion that a receiver was warranted or rebut Plaintiff's allegations of fraud. (Second Supplemental Affidavit of William R. Skolnick dated August 30, 2012, ¶ 2). [Docket No. 131].

## BREACH OF FIDUCIARY DUTY AND UNJUST ENRICHMENT

23.     From approximately January 2008 through January 2009, Defendant Jarayan acted as Afremov's agent in the procuring of Imperial Russian silver pieces. (Affidavit of Michael Afremov dated August 29, 2012 ("Afremov Aff."), ¶2) [Docket No. 125].

24.     Jarayan agreed to procure the silver pieces for Afremov at the lowest and best price possible, and Afremov in turn agreed to pay Jarayan a 5% commission on the sale price of the pieces. (Id.).

25.     Jarayan agreed that the 5% commission paid by Afremov would be the only compensation that he would receive for his services as Afremov's agent in the silver transactions. (Id.).

26.     Beginning in about the spring of 2008, Jarayan began obtaining the majority of the silver pieces for Afremov from Atzbach & Thomas, Inc., a dealer in Imperial Russian art and antiques that is solely owned by Third-Party Defendant John Atzbach. (Id. ¶3; Affidavit of John Atzbach dated October 15, 2012 ("Atzbach Aff."), ¶2) [Docket No. 143].

27.     Pursuant to the agreement of all the parties, Atzbach shipped and invoiced the pieces purchased by Jarayan on behalf of Afremov directly to Afremov to save substantial shipping and insurance costs. (Afremov Aff. ¶4).

28.     Afremov paid Jarayan his 5% commission for these Russian silver purchases from Atzbach & Thomas. (Afremov Aff. §8).

29.     Afremov also paid the Atzbach & Thomas invoices, which, unbeknownst to him, included commissions that Atzbach & Thomas was paying to Jarayan on the same purchases. (Atzbach Aff. ¶¶ 4, 5; Afremov Aff. ¶10).

30.     Thus, Jarayan was secretly receiving double commissions from Afremov on certain transactions.

31.     The amount of the double commissions paid by Afremov directly or indirectly to Jarayan as his agent in 2008 and 2009 totaled $1,070,268.50.  (Atzbach Aff. ¶5).

## INJUNCTIVE RELIEF

32.     Prior to Plaintiff's commencement of this lawsuit, Defendant Jarayan left numerous telephone messages threatening Afremov and his family.  (See Depo. of Jarayan, pp. 333-42).  The specific threats include the following:

- "Think about yourself seriously and your family."
- "You and your family are going to pay for this."
- I will do something very bad for you and for Berman too.  I already promised him that.  Even court can't save you."
- "I'll pretty soon come to see you.  Think about that."
- "And you have kids too — so far."
- "Afremov, f*** you. [Armenian] Don't forget that.  Your wife will be f***ed [Armenian]."
- "Hey, I left you a message.  Your life is ending. [swearing in Armenian] Understand me.  It's your last day."
- "Party, live as long as you can, good luck."

During his deposition, Jarayan unequivocally admitted making the above statements.  (Depo. of Jarayan, p. 342).

33.     Jarayan made similar threats to Third-Party Defendant Atzbach as well.  (See Depo. of Atzbach, pp. 75-85).   Atzbach contacted local and federal authorities because of Jarayan's threats.  (Id., at 75-81).   Jarayan also appeared at a Miami antique show in January 2012, where he knew Atzbach would be.  (Id. at 90-100).  The organizers of the show were forced to call police to remove Jarayan from the premises.  (Id., at 99-100).

Based on the foregoing Findings, the Court makes the following:

## CONCLUSIONS OF LAW

1.     Plaintiff and Defendants entered into a contract, namely the Agreement of AM Plaza LLC.

2.      Defendants breached the Agreement of AM Plaza LLC (Count 4 of the Amended Complaint) by failing to transfer the Armenian real estate to the LLC; failing to maintain accurate books of account in accordance with generally accepted accounting principles; failing to make financial reports to Plaintiff; failing to prepare and file tax returns for the LLC; and failing to obey laws that prohibit the payment of bribes to government officials.  See H-M Wexford, LLC v. Encorp, Inc., 832 A.2d 129, 140 (Del. Ch. 2003) (listing the elements of breach of contract under Delaware law, which applies to the Agreement of AM Plaza, LLC).

3.      As a direct and proximate result of Defendants' breaches of contract, Plaintiff was damaged in the sum of $2,190,000, the amount that he provided to Defendants for the purchase of land in Armenia that they have never transferred to the LLC, and is entitled to summary judgment in that amount.

4.      Jarayan committed fraud (Count 1 of the Amended Complaint) by making false representations that were intended to induce reliance by Plaintiff and upon which Plaintiff reasonably relied to his detriment.  See Hoyt Properties, Inc. v. Production Resource Group, LLC, 736 N.W.2d 313, 318 (Minn. 2007) (listing the elements of fraud under Minnesota law, which applies to Plaintiff's fraud claim).

5.      It is undisputed that Plaintiff reasonably relied on Jarayan's representations regarding the purchase price of land in Armenia necessary for the casino project by transferring to Jarayan the sum of $2,190,000.  Jarayan's failure to transfer the property and his failure to produce evidence uniquely available to him to substantiate the purchase prices permits an inference that his representations were deliberately false and intended to deceive and induce reliance by Plaintiff.  See Evans v. Robbins, 897 F.2d 966, 970 (8th Cir. 1990) (citing Aetna Casualty & Surety Co. v. Reliable Auto Tire Co., 58 F.2d 100, 104 (8th Cir. 1932)); see also

Mid-Continent Petroleum Corp. v. Keen, 157 F.2d 310, 315 (8th Cir. 1946) (rehearing denied Nov. 22, 1946) ("Where relevant evidence is within the control of the party to whose interest it would naturally be to produce it and he fails so to do, without satisfactory explanation, and produces no evidence or weaker evidence, an inference is justifiable that it would be unfavorable to him.").

6. As a direct and proximate result of Jarayan's fraud, Plaintiff was damaged in the sum of $2,190,000 and is entitled to summary judgment in that amount.

7. Plaintiff is entitled to injunctive relief restraining Jarayan from threatening or harassing Plaintiff or his family members.

8. As previously found and ordered by the Court, Defendants are in default and all of their affirmative claims for relief should be dismissed with prejudice.

**THEREFORE, IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Partial Summary Judgment [Doc. No. 128] is **GRANTED** in its entirety;

2. Judgment shall be entered in favor of Plaintiff against Defendants Artur Jarayan and Object of Vertu, LLC, jointly and severally, on Count 1 (Fraud) and Count 4 (Breach of Contract) of the Amended Complaint [Docket No. 58] in the amount $2,190,000.00, plus pre-judgment interest and other taxed costs.

3. Judgment shall be entered in favor of Plaintiff and against Defendant Artur Jarayan on Count 9 (Injunctive Relief) of the Amended Complaint {Docket No. 58], permanently enjoining and prohibiting Defendant Jarayan from harassing, threatening, or attempting to intimidate Plaintiff or members of his family.

4. Plaintiff's Motion for Default Judgment [Doc. No. 141] will be construed instead as a Motion for Summary Judgment, and as such, is **GRANTED.** Judgment shall be

entered in favor of Plaintiff and against Defendants, jointly and severally, on Count 6 (Breach of Fiduciary Duty) and Count 7 (Unjust Enrichment) of the Amended Complaint [Docket No. 58], in the amount of $1,070,268.50, plus pre-judgment interest and other taxed costs.

5.     All counts of Defendants' Counterclaim against Plaintiff [Docket No. 27] are hereby dismissed on the merits and with prejudice.

6.     The Court's previous Order appointing a Receiver over the management, operations, and assets of AM Plaza, LLC [Docket No. 88] shall continue in full force and effect, including but not limited to Defendants' duties to surrender property as defined in the Order and to reasonably provide cooperation and assistance to the Receiver in connection with the discharge of his duties.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:

Date:  October 24, 2012          s/Susan Richard Nelson
                                 SUSAN RICHARD NELSON
                                 United States District Judge