UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Michael Afremov, | Civil No. 11-00313 (SRN/SER) |
| Plaintiff, | |
| v. | |
| Artur Jarayan, and Object of Vertu, LLC | **ORDER** |
| Defendant and Third-Party Plaintiffs, | |
| v. | |
| John Atzbach, | |
| Third-Party Defendant. | |

_____

Andrew H. Bardwell, Skolnick & Shiff, PA, 527 Marquette Avenue South, Suite 2100, Minneapolis, Minnesota 55402, for Plaintiff

Sandra K. Kensy, 5430 Carlson Road, St. Paul, Minnesota 55126, for Third-Party Defendant John Atzbach

No Appearance on Behalf of Defendants and Third-Party Plaintiffs, Artur Jarayan and Object of Vertu, LLC
_____

This matter came on for hearing on October 24, 2012 before the Honorable Susan Richard Nelson upon Third-Party Defendant's Motion for Summary Judgment [Doc. No. 121] and Motion for Default Judgment and for Attorney's Fees [Doc. No. 137].

Based upon all the files, records, and proceedings herein, the Court hereby makes the following:

## FINDINGS OF FACT

1. Plaintiff Michael Afremov ("Afremov") is an engineer engaged in the business of research and development of medical devices. Afremov Depo., p. 6, l. 13-14; p. 21, l. 12 – p. 24, l. 4) At all times material herein, Afremov was interested in acquiring Imperial Russian silver pieces. (Afremov Depo., p. 26).

2. Defendants Artur Jarayan ("Jarayan") and Object of Vertu ("Vertu") (collectively "Defendants") were engaged in the business of buying and selling Imperial Russian Silver pieces.

3. Third-Party Defendant John Atzbach ("Atzbach") is a dealer in Imperial Russian art and antiques. Atzbach Depo., p. 102, l. 23-24; Jarayan Depo., p. 46, l. 22 – p. 47, l. 2) Since 1998, Atzbach has operated his business through the legal entity Atzbach & Thomas, Inc. (Atzbach Depo., p. 11, l. 12 – p. 12, l. 5)  All transactions at issue in this litigation were done by Atzbach as the representative of Atzbach & Thomas, Inc. (Atzbach Depo., p. 11, l.12- p. 12, l. 5)

**THE SILVER TRANSACTIONS**

4.  Afremov engaged Jarayan to act as his agent in the procuring of Imperial Russian Silver pieces. (Afremov Depo., p. 57, l. 10-15)  Jarayan was to purchase such pieces for Afremov at the lowest and best price possible.  In return, Afremov agreed to pay to Jarayan a commission of 5% the purchase price.  (Id.)

5.  Beginning in 2008, Jarayan, through his company Eastern European Art Gallery, Inc., ("Eastern European") began purchasing items from Atzbach & Thomas, Inc. for resale to Afremov.  Jarayan was a client of Atzbach & Thomas, Inc. to whom it was supplying merchandise.  Atzbach Depo., p. 17, l. 16 – p. 18, l. 25) Jarayan asked Atzbach to ship and bill Afremov directly on Jarayan's behalf and, in connection therewith, to withhold a portion of the purchase price as a commission to Jarayan. (Atzbach Depo., p. 16, l. 18-23; p. 19, l. 20-24)  Atzbach agreed to do so for certain transactions.  Each transaction that Atzbach handled for Afremov and Jarayan had a separate agreement with respect to the amount, if any, of commission or discount applied.  (Jarayan Depo., p. 232, l. 12-14).   The amount of the commission was variable, on a case-by-case basis, at the discretion of Atzbach.  (Atzbach Depo., p. 16, l. 23- p. 17, l. 9; p. 150, l. 18-

24; Jarayan Depo., p. 233). There were some transactions in which no commission or discount was given. (Atzbach Depo., p. 16, l. 25 – p. 17, l. 1)

6. Atzbach & Thomas, Inc. paid to Eastern European Art Gallery the sum of $1,030,268.50 in 2008 and the sum of $40,000 in 2009 in commissions for the pieces that Jarayan purchased on behalf of Afremov. (Jarayan Depo., p. 221; Kensy Aff., Ex. E (Depo. Ex. 51))

7. Because Jarayan was Atzbach & Thomas' client, Atzbach was acting under the direction of Jarayan as to the amount to invoice Afremov. . (Atzbach Depo., p. 23, l. 5-8)  All negotiations as to the sales price of the items to Afremov were between Afremov and Jarayan, without any involvement of Atzbach. (Atzbach Depo., p. 21, l. 25 – p. 22, l. 11).  At no time did Atzbach ever represent to Afremov that the amounts set forth in Atzbach & Thomas, Inc. invoices were the lowest possible price at which he would sell the piece, that the price at which he was selling the piece was the price at which he or Third-Party Plaintiffs had procured it, or whether Atzbach or Third-Party Plaintiffs were receiving any commissions in connection with the sale of the piece. (Afremov Aff., ¶ 5; Atzbach Aff., ¶ 5)

8. Atzbach owed no duty to acquire artifacts for Afremov "at the lowest possible price".  Afremov understood that Atzbach was a "dealer" of Russian artifacts and that he would profit from the sales to Afremov.

(Afremov Depo., p. 58, l 17-21). Afremov had an agency relationship only with Jarayan with respect to the artifact transactions. (<u>Id</u>., p. 166, l 10- p. 167, l. 1). It was Jarayan only who received secret commissions at the expense of Afremov.

9. In addition to the silver transactions, Third-Party Plaintiffs and Afremov were involved in a company known as AM Plaza, LLC. ("AM Plaza") (ECF No. 73-1, Ex. A)  AM Plaza was formed for the purpose of building and operating a casino in Armenia. Afremov and Vertu were members of AM Plaza and Jarayan was the Manager. (<u>Id</u>.)  Afremov had entrusted Jarayan with $2,190,000 which he was supposed to use for the benefit of AM Plaza, LLC. (<u>Id</u>., Section 4.1(a)(i).)  Afremov accused Jarayan of defrauding him in connection with this business transaction and, in July of 2009, terminated his relationship with Jarayan. (Kensy Aff., Exhibit D (Deposition Ex. 40))

10. Following his discovery of Jarayan's fraud concerning the casino operation, Afremov told Atzbach that he severed his relationship with Jarayan and that he suspected Jarayan had defrauded him in connection with the silver transactions as well. (Atzbach Depo., p. 64, l. 6 – p. 66, l. 6)  During that conversation, Afremov told Atzbach that he had an agreement with Jarayan whereby, for a 5% commission, Jarayan was to work as his

agent and obtain for him the very best prices possible in his negotiations for the artifacts. Afremov asked Atzbach whether he had ever paid Jarayan any commissions and he told him that he had. Prior to this conversation, Atzbach had no knowledge of the terms of the agreement (Atzbach Depo., p. 64, l. 6 – p. 66, l. 6)

11. Afremov confirmed that it was only *after* he had terminated his relationship with Jarayan that Atzbach told him that Jarayan had been double-dipping in that he had received commissions from Atzbach in connection with the silver pieces that Atzbach had, at Jarayan's direction, shipped and invoiced directly to Afremov. (Afremov Depo., p. 62, l. 23 – p. 63, l. 9; p. 65, l. 16-20; Afremov Aff., ¶ 11)

**THE CHEN COLLECTION**

12. In addition to the various agreements respecting the silver transactions with Afremov, there were times when Atzbach & Thomas, Inc. and Jarayan purchased certain Imperial Russian pieces together. (Atzbach Depo., p. 44, l. 14-17) There were also times when Atzbach sold "shares" of pieces to Jarayan. (Atzbach Aff., ¶ 6) At issue in this litigation are three (3) pieces that were part of a very large collection that was known as the "Chen Collection". The three pieces are a Large Kurlykov Enamel Tazza ("Tazza"), a Ruckert Card Case ("Card Case"), and a Kurlykov/Ruckert Tea

Set ("tea set") that were purchased by Atzbach at Lyon & Turnbull. (Id.) Atzbach sold to Jarayan a one-third interest in those pieces for the total sales price of $204,557.03. (Id.) Atzbach had also sold a one-third interest in the pieces to a client of Atzbach & Thomas, Inc. named Alex. (Atzbach Depo., p. 125, l. 22-p.127, l. 6; Atzbach Aff., Ex. A)

13. In April of 2009, Atzbach sold to Afremov Atzbach & Thomas and Alex's two-third's interest, in the tea set for the sum of $400,000. (Atzbach Depo., p. 131, l. 7-11). The sale of Jarayan's one-third interest in the tea set was addressed separately between Afremov and Jarayan. (Jarayan Depo., p. 308, l., 2-6; Atzbach Depo., p. 131, l. 7-1; Atzbach Aff., Ex. A, JAR002030) Afremov paid to Jarayan $100,000 for his one-third share in the tea set and Jarayan accepted and cashed the check. (Jarayan Depo., p. 308, l. 12-18) Afremov sent a second $100,000 check to Jarayan which supposedly was never cashed. (Jarayan Depo., p. 308, l. 19-22) At the time all interests in the tea set were sold to Afremov for a total of $600,000, the retail price of the tea set was listed at $750,000. (Atzbach Aff., ¶ 7)

14. In July of 2010, Afremov indicated some interest in the Tazza and the Card Case, the remaining two co-owned Chen collection pieces. (Atzbach Depo., p. 130, l. 7-11; Atzbach Aff., ¶ 8) Atzbach and Alex agreed to sell their respective one-third ownership interests to Afremov. Consistent with

the sale of the tea set a year earlier, if Afremov wanted to purchase Jarayan's one-third interest, he would have to negotiate that purchase directly with Jarayan. (Atzbach Depo., p. 130, l. 7 – 131, l. 6)  Sometime after the sale, Atzbach delivered the two pieces to Afremov. (Atzbach Depo., p. 133, l. 18-25)

15. Although Jarayan claims that Atzbach and Alex could not sell their interests in the two remaining Chen collection pieces, there was no agreement between Atzbach and Jarayan that Atzbach would not ever sell his one-third interest. (Atzbach Depo., p. 151, l. 25-152, l. 3; Jarayan Depo., p. 311, l. 1-11)  There was no requirement that either party inform the other if they were going to sell their interest in the pieces. (Atzbach Depo., p. 152, l. 4-7).  There was no prohibition that Atzbach could not transfer the possession of the pieces to another party. (Atzbach Depo., p. 153, l. 4-7).  In fact, Jarayan never met or spoke to the third owner of the pieces, Alex, and had absolutely no agreement with him. (Jarayan Depo., p. 312, l. 25-313, l. )

16. The Amended Third-Party Complaint was filed on June 1, 2011. (ECF 27).  Third-Party Defendant filed his motion for summary judgment on September 12, 2012 (ECF 121).  Third-Party Plaintiffs failed to file any responsive pleadings.  Third-Party Defendant incurred fees in connection

with this summary judgment motion in the amount of $11,422.50 and costs in the amount of $201.56.(Kensy Aff., ECF 139)

17.   On October 9, 2012, this Court entered an Order of Default against Defendants and judgment of default was thereafter entered. (ECF 135, 136)

Based on the foregoing, the Court makes the following:

## CONCLUSIONS OF LAW

1.   Third-Party Defendant has established that all transactions at issue were consummated Atzbach & Thomas, Inc.  In the absence of any responsive briefing from Third-Party Plaintiff or appearance at oral argument, Atzbach has demonstrated that no genuine issues of material fact exist as to claims against him individually and that he is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(e)(2).  Third-Party Plaintiffs have not presented any evidence which would establish that Atzbach acted in his individual capacity with respect to any transactions at issue in the Amended Third-Party Complaint.  Accordingly, the Amended Third-Party Complaint is dismissed in its entirety.

2.   Third-Party Plaintiffs sought contribution and indemnity from Atzbach, individually, for the silver fraud claims and unjust enrichment claims of Plaintiff, claiming that he had a common liability to Afremov as a result of his involvement in the silver transactions.  This Court has held that "Defendants may not implead Atzbach unless he could be jointly liable to Afremov for the particular

claims he alleges with respect to the artifact transactions – essentially that Jarayan failed to act in Afremov's best interests by not acquiring the artifacts at the lowest possible prices." (Memorandum Opinion and Order, ECF No. 66, p. 27.)  Atzbach has demonstrated that no genuine issues of material fact exist and that he is entitled to judgment as a matter of law on Third-Party Plaintiffs' claims of contribution and indemnity (Count One).  Third-Party Plaintiffs have not demonstrated the existence of specific facts in the record that create a genuine issue for trial.

3. Absent any claims of contribution and indemnity, Third-Party Plaintiffs' supplemental state law claims, Counts Two through Nine, are dismissed.

4. Atzbach has demonstrated that he is entitled to judgment as a matter of law on Count Two – the oral contract to pay commissions.  The amount of commission to be paid, if any, by Atzbach to Jarayan, based on sales of artifacts to Afremov, rested solely with Atzbach.  The agreement as to whether to pay a commission, and the amount thereof, was made on a case by case basis entirely at the discretion of Atzbach.  Third-Party Plaintiffs have failed to produce evidence from which this Court could fix the legal liabilities of the parties with respect to their claims of an oral contract with respect to the payment of commissions.

5. Atzbach has demonstrated that he is entitled to judgment as a matter of law on Counts Four and Five -- Tortious Interference with Contract and Tortious Interference with Prospective Economic Relationships.  These Counts are based on

Third-Party Plaintiffs' allegation that Jarayan acted as Afremov's "exclusive agent" with respect to the acquisition of the Russian antiquities. (Amended Third Party Complaint, ¶ 23). Jarayan admitted that he was not an exclusive agent for Afremov and that Afremov was purchasing such items from all over the world. (Jarayan Depo., p. 52, l. 1-14). Furthermore, Atzbach first learned of terms of the agency agreement between Afremov and Jarayan after Afremov had terminated the agency agreement and therefore Third-Party Plaintiffs cannot establish all elements of their prima facie case. Third-Party Plaintiffs have failed to demonstrate the existence of specific facts in the record that create a genuine issue for trial with respect to their claims of Tortious Interference with Contract and Tortious Interference with Prospective Economic Relationships.

6.   Atzbach has demonstrated that he is entitled to judgment as a matter of law with respect to Third-Party Plaintiffs' claims of Promissory Estoppel (Count Six); Conversion (Count Seven); Civil Conspiracy (Count Eight); and Breach of the Covenant of Good Faith and Fair Dealing (Count Nine). Third-Party Plaintiffs have failed to demonstrate the existence of specific facts in the record that create a genuine issue for trial. Atzbach is entitled to a judgment of dismissal.

7.   Because the Court grants Third-Party Defendant's Motion for Summary Judgment on the merits, his Motion for Default Judgment is denied as moot. In his Motion for Default Judgment, Third-Party Defendant also seeks

attorney's fees pursuant to Local Rule 7.1(g)(4). This rule gives the Court discretion to award various sanctions for a party's failure to timely file and serve a memorandum of law, including an award of reasonable attorney's fees to the opposing party. See D. Minn. LR § **7**.1(g) ("If a party fails to timely file and serve a memorandum of law, the court may cancel the hearing and consider the matter submitted without oral argument; reschedule the hearing; hold a hearing, but refuse to permit oral argument by the party who failed to file; award reasonable attorney's fees to the opposing party; take some combination of these actions; or take any other action that the court considers appropriate."). The Court's use of the discretionary remedial actions set forth in Local Rule 7.1(g) are perhaps most appropriate when a party's actions have required the opposing party to undertake unnecessary motion practice. Here, the instant motions filed by Third-Party Defendant were not unnecessary. Rather, Third-Party Defendant's motions were necessary, with or without a response from Third-Party Plaintiffs. Accordingly, the Court declines to exercise its discretion to award attorney's fees and denies Third-Party Defendant's motion in this respect.

**THEREFORE, IT IS HEREBY ORDERED**:

1. Third-Party Defendant's Motion for Summary Judgment [Doc. No. 121] is **GRANTED**;

2. The Amended Third-Party Complaint is dismissed in its entirety on the merits and with prejudice; and

3. Third-Party Defendant's Motion for Default Judgment and for Attorney's Fees as to Third-Party Plaintiffs [Doc. No. 137] is **DENIED AS MOOT** in part as to default judgment, and **DENIED** in part as to the request for attorney's fees.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

DATED: October 24, 2012  BY THE COURT:

s/Susan Richard Nelson
Susan Richard Nelson
United States District Court Judge