jUNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Michael Afremov,

    Plaintiff.

v().    Case No.: 11-CV-313 (SRN/SER)

Artur Jarayan, and
Object of Vertu, LLC,

    Defendants and Third-Party Plaintiffs,

v.    **REPORT AND RECOMMENDATION**

John Atzbach,

    Third-Party Defendant.

---

William R. Skolnick, Rolin L. Cargill, and Andrew Bardwell, Esqs., Skolnick and Shiff, PA, 2100 Rand Tower, 527 Marquette Avenue, Minneapolis, Minnesota 55402, for Plaintiff.

Artur Jarayan, *Pro Se*.

Sandra K. Kensy, Esq., 5430 Carlson Road, St. Paul, Minnesota 55126, for Third-Party Defendant.

---

STEVEN E. RAU, United States Magistrate Judge

The above-captioned case comes before the undersigned on Plaintiff Michael Afremov's ("Afremov") Motion for an Order to Show Cause Why Defendant Artur Jarayan Should Not Be Held in Contempt of Court for Violating the Court's July 26, 2012 Receivership Order ("Motion

to Show Cause") [Doc. No. 150].[1] This matter has been referred for the resolution of pretrial matters pursuant to 28 U.S.C. § 636(b)(1)(A), (B), and (C), and District of Minnesota Local Rule 72.1. (Order of Reference Dated April 15, 2013) [Doc. No. 157]. For the reasons stated below, the Court recommends denying the Motion and finding Jarayan not to be in contempt of court.

I.    BACKGROUND

   A.    Factual Background[2]

In October 2008, Afremov and Artur Jarayan ("Jarayan") signed a document called the "AM Plaza Agreement" to form AM Plaza, LLC, the entity that would carry out their plan to create a casino in Armenia (the "Casino Project"). (Compl.) [Doc. No. 1 ¶ 21]; (Findings of Fact, Conclusion of Law, and Order for Judgment, "Findings of Fact") [Doc. No. 146 at 2–3]. In furtherance of the Casino Project, Afremov gave Jarayan $1,720,000 to purchase land in Armenia. (Compl. ¶ 15); (Findings of Fact at 2–3). After the purchase of certain real property in Armenia (the "Armenian Property"), the Casino Project failed to progress. (Compl. ¶¶ 25–30); (Findings of Fact at 4–6). Afremov subsequently filed this action seeking reimbursement of the funds provided to Jarayan.[3] *See* (Compl.). Jarayan and Object of Vertu, LLC were initially represented by counsel but counsel moved the Court to withdraw without substitution after Jarayan discharged them. (Mots. to Withdraw) [Doc. Nos. 96, 103]; (Mems. in Supp. of Mot. to

---

[1] Third Party Defendant, John Atzbach, has not taken part in the proceedings on the Motion to Show Cause as he "has no interest or claims with respect to AM Plaza LLC, the Armenian real estate, or Plaintiff's judgments against Defendants and Third-Party Plaintiffs." (Mem. of John Atzbach in Resp. to Pl.'s Mot. for Order to Show Cause) [Doc. No. 160].

[2] The factual background in this case has been summarized in detail in the multiple orders and Reports and Recommendations that have been issued. *See* (Mem. and Order Dated Mar. 28, 2012) [Doc. No. 66 at 2–3]; (Mem. Opinion and Order Dated July 26, 2012) [Doc. No. 88 at 1–5]; (Order Dated Sept. 10, 2012) [Doc. No. 118 at 2–6]; (Findings of Fact, Conclusions of Law, and Order for Judgment Dated Oct. 24, 2012) [Doc. No. 146]; (Order Dated Oct. 24, 2012) [Doc. No. 147]; (Order Dated May 30, 2013) [Doc. No. 162 at 2–5].

[3] Judgment has been entered in favor of Afremov against Jarayan and Object of Vertu, LLC in October 2012. (Judgment) [Doc. No. 149].

Withdraw) [Doc. Nos. 97 at 2 and 106 at 2]. Counsel indicated in a separate affidavit that there was other good cause for withdrawal, but that any submission would have to be made to the Court *in camera* due to the confidential client information involved. (Aff. of John D. Thompson) [Doc. Nos. 98 ¶ 4 and 107 ¶ 4]. The Court heard argument on the motions to withdraw on August 28, 2012. (Minute Entry Dated Aug. 28, 2012) [Doc. No. 115]. The Court granted the Motions to Withdraw, despite objections by Afremov and Atzbech, and Jarayan was given instructions about how to proceed. (Order Dated Sept. 10, 2012) [Doc. No. 118]. Counsel noticed their withdrawal, informed Jarayan of the Court's September 10, 2012 Order, and highlighted the Court's instructions for Jarayan. (Notice of Withdrawal as Attorney to Artur Jarayan) [Doc. No. 119]; (Notice of Withdrawal as Attorney to Object of Vertu, LLC) [Doc. No. 120]. Jarayan did not respond to the Court's September 10, 2012 Order, and the Honorable Susan Richard Nelson entered an order directing the Clerk of Court to enter default for Artur Jarayan and Object of Vertue, LLC pursuant to Federal Rule of Civil Procedure 55(a). (Order Dated Oct. 9, 2012) [Doc. No. 135]. Jarayan has appeared *pro se* in the proceedings on the pending Motion to Show Cause.

On October 24, 2012, Judge Nelson entered Findings of Fact, Conclusions of Law, and an Order for Judgment granting Plaintiff's Motion for Partial Summary Judgment and for Default Judgment. [Doc. No. 146]. Judgment, accordingly, was entered for Afremov against Jarayan and Object of Vertru, LLC, in excess of $3,000,000. [Doc. No. 149].[4]

During the course of litigation, Afremov moved for an order appointing a receiver to oversee the dissolution of AM Plaza, LLC and the Armenian Property that was to be used for the

---

[4] Judgment was also entered for John Atzbach, Third-Party Defendant, granting his motion for summary judgment, dismissing the Amended Third-Party Complaint, and denying as moot Third-Party Defendant's Motion for Default Judgment and denying his request for attorney's fees. (Judgment for Third Party Defendants) [Doc. No. 148].

Casino Project. (Mot. to Appoint Receiver) [Doc. No. 70]. On July 26, 2012, Judge Nelson granted Afremov's Motion to Appoint Receiver and appointed Jerry A. Bremer (the "Receiver") as the Receiver for this matter. (Order Dated July 26, 2012, the "Receivership Order") [Doc. No. 88 at 4–7]. The Receivership Order provided instruction for Jarayan's cooperation with the Receiver. (*Id.* at 7–8). Specifically, the Receivership Order instructed Jarayan to "immediately:"

   a. Surrender to the control of the Receiver all property belonging to or in the possession, custody, or control of AM Plaza, including but not limited to deposit accounts, securities accounts, promissory notes, deeds, mortgages, contracts, leases, checks, instruments, documents of title, accounts receivable, owned and leased real property, owned and leased office space, owned and leased office equipment and supplies, computer software, and all books, records, and electronically stored data;

   b. Provide the Receiver with all keys and other access devices, including password codes, relating to AM Plaza or any property belonging to or in the possession, custody, or control of AM Plaza;

   c. Comply with any direction of the Receiver to endorse and deliver to the Receiver all checks and other payments of monies currently in or hereafter coming into AM Plaza's possession or control; and

   d. Reasonably provide cooperation and assistance to the Receiver so as to enable the Receiver to assume and discharge his duties under this Order and applicable law, including cooperating by voluntarily disclosing all financial and other information to the Receiver concerning AM Plaza.

(*Id.*).

Upon undertaking his role, the Receiver concluded the only asset AM Plaza, LLC possessed was the Armenian Property and, pursuant to the Receivership Order, the Receiver contacted Jarayan in search of more information. (Aff. of Jerry A. Bremer, "Bremer Aff.") [Doc.

4

No. 155 ¶¶ 2–3]. Initially, Jarayan showed a willingness to comply with the Receivership Order. (Sept. 6–11, 2012 Email Exchange, Ex. B, Attached to Bremer Aff.) [Doc. No. 155-2 at 4]. Shortly thereafter, however, his responses became noncompliant and he refused to cooperate with the Receiver. (*Id.* at 2–3, 4). Also, Jarayan represented to the Receiver that he sold the Armenian Property and used the proceeds to pay down his own debts. (Bremer Aff. ¶ 11); (Feb. 2013 Email Exchange, Ex. C, Attached to Bremer Aff.) [Doc. No. 155-3 at 1]. During a February 2013 telephone conversation with Afremov's counsel, Jarayan again said he sold the Armenian Property and claimed the transaction took place before the Receivership Order. (Affidavit of Andrew H. Bardwell) [Doc. No. 154 ¶ 2]. During that call, Jarayan refused to provide Afremov or the Receiver any documentation regarding the sale of the Armenian Property or the sale's proceeds. (*Id.* ¶ 3).

Afremov moved for an Order to Show Cause. [Doc. No. 150]. The Motion was referred to the undersigned and a hearing was held on May 30, 2013. (Order of Reference Dated Apr. 15, 2013); (Minute Entry Dated May 30, 2013) [Doc. No. 161]. Jarayan made no written response to Afremov's Motion, but attended the hearing via telephone.[5] *See* (Minute Entry Dated May 30, 2013).

---

[5] In most cases with a similar procedural posture, after a party moves for an Order to Show Cause, the Court enters an Order to Show Cause, and a hearing is held on the Order and Motion. *See, e.g.*, *Reed v. A & A Stanley Const., Inc.*, Case No. 12-cv-869 (MJD/LIB), 2013 WL 1065371 (D. Minn. Feb. 13, 2013) *report and recommendation adopted*, 2013 WL 1015343 (D. Minn. Mar. 14, 2013); *Piscitiello v. Delanor, Kemper & Associates, LLC*, Case No. 11-cv-2204 (RHK/AJB), 2013 WL 3789723 (D. Minn. July 18, 2013); *Edeh v. Carruthers*, Case No. 10-cv-2860 (RHK/JSM), 2011 WL 4808194 (D. Minn. Sept. 20, 2011) *report and recommendation adopted*, 2011 WL 4808191 (D. Minn. Oct. 11, 2011). There are examples, however, where a party's motion to show cause has been heard without an order to show cause being issued first, like was the case here. *See Faegre & Benson, LLP v. Purdy*, 367 F. Supp. 2d 1238 (MJD/SRN) (D. Minn. 2005); *Snowden v. Time Safe, Inc.*, Case No. 10-cv-4516 (JNE/JJG), 2012 WL 2569052 (D. Minn. May 30, 2012) *report and recommendation adopted*, 2012 WL 2571206 (D. Minn. July 3, 2012).

On May 30, 2013, the Court entered an order staying and holding in abeyance Afremov's Motion to Show Cause. (Order Dated May 30, 2013) [Doc. No. 162]. The Order provided that the stay would be lifted and the Motion to Show Cause would be taken under advisement if Jarayan failed to comply with the following requirements:

> 2. Jarayan shall comply with the Honorable Susan Richard Nelson's July 26, 2012 Order [Doc. No. 88] [the Receivership Order]. To that end, within **ten (10) days** of service of this Order, he shall provide the following information and any supporting documentation:
>
>    a. Ownership of the Armenian Property
>       i. Any and all documents pertaining to the ownership of the Armenian Property after Jarayan's purchase, including but not limited to title, title transfers, and any encumbrances against the Armenian Property.
>
>    b. Regarding the Sale of the Armenian Property
>       i. Any and all documents pertaining to the sale of the Armenian Property, including but not limited to advertisements placed for the Armenian Property, sales documents, purchasing documents, relevant loans, and purchase agreements or contracts.
>       ii. Any and all documents containing the seller's identity, purchaser's identity, amount or consideration provided in exchange for the Armenian Property, description of the property sold, currency in which payment was tendered, and how the purchaser tendered payment (serial payments, loan agreements, any relevant interest agreements, wire transfer, cash, check, etc.).
>
>    c. Regarding the Proceeds from the Sale of the Armenian Property
>       i. An accounting of all proceeds received for the sale of the Armenian Property, including any subsequent transactions

---

Here, the parties have proceeded as if an order to show cause was issued as Afremov argued in his submissions to the Court and before the Court at the May 30, 2013 hearing why Jarayan should be held in contempt of Court. *See* (Afremov's Mem. in Supp.); (Afremov's Supplemental Mem. in Supp.). Because of how the parties have proceeded in this case, the extra step of issuing an order to show cause and then having a hearing on that order to show cause is unnecessary. The Court has ample information before it to decide the ultimate issue of whether Jarayan should be held in contempt.

>             involving the proceeds (payment of other debts, purchase
>             of other property, savings, investment, etc.).
>        ii.  To the extent Jarayan used the proceeds to pay down his
>             own debts, documentation evidencing the date the debt was
>             incurred, what it was incurred for, to whom the debt was
>             owed, any relevant interest or penalty payments that
>             attached to the debt, original due date of the debt, date the
>             debt was paid with the sale proceeds, to whom the debt was
>             paid, currency in which payment was tendered, how
>             payment was tendered (serial payments, loan agreements,
>             any relevant interest agreements, wire transfer, cash, check,
>             etc.).
>
> 3. Afremov is directed to serve a copy of this Order on Jarayan via email by
>    the end of the [day] Friday, May 31, 2013.

(*Id.* at 5–7).

Then, on August 21, 2013, the Court entered another order continuing the stay of the Motion to Show Cause in light of Afremov's August 1, 2013 Letter to the Court explaining that Jarayan had provided documents to Afremov showing that the Armenian Property was sold *prior to* the Court's Receivership Order, not after as Afremov contended earlier. (Order Dated Aug. 21, 2013) [Doc. No. 164 at 2]. The Court requested "that Afremov withdraw his pending Motion, and refile the Motion in light of these new facts." (*Id.*). The Court provided further guidance explaining that:

> The refiled motion should include the documents provided by Jarayan, and should focus on the relief Afremov seeks from the Court in light of Jarayan's newly provided documents. To the extent Afremov seeks civil contempt in the form of monetary sanctions, Afremov should specify the amount sought and reasons supporting that amount. Afremov should comply with the Federal Rules of Civil Procedure and Local Rules, and Jarayan may respond to the extent permitted by the Local Rules. Afremov must serve a copy of this Order on Jarayan via email by 5:00 p.m. on August 22, 2013.

(*Id.*). Afremov did not refile his Motion to Show Cause.

Afremov filed nothing in response to the Court's August 21, 2013 Order besides an affidavit evidencing that he served via email the Court's August 21, 2013 Order on

Jarayan's email address. (Aff. of Service by Michael Afremov) [Doc. No. 165]. Because the Motion to Show Cause had been outstanding for six months, the Court issued an Order requiring:

1. Afremov must either withdraw his Motion for an Order to Show Cause Why Defendant [Artur] Jarayan Should Not Be Held in Contempt of Court for Violating the Court's July 26, 2012 Receivership Order [Doc. No. 150] and refile it, or file supplemental briefing within thirty (30) days from the date of this Order. If Afremov does not take either action, the Court will recommend that the Motion be dismissed without prejudice.
2. Afremov is directed to serve a copy of this Order on Jarayan via email by 5:00 p.m. on October 4, 2013.

(Order Dated October 1, 2013) [Doc. No. 166 at 2]. In response, Afremov filed a supplemental memorandum in support of his Motion to Show Cause on October 21, 2013, in accordance with the Court's October 1, 2013 Order. (Supp. Mem. in Support) [Doc. No. 168]. In Afremov's supplemental memorandum, he argues that his Motion to Show Cause should still be granted because Jarayan's response to the Court's May 30, 2013 Order, "did not come close to satisfying what the Court demanded." (*Id.* at 1).

The Court then ordered that "Jarayan may file a response to Plaintiff Michael Afremov's Supplemental Memorandum in Support of Motion for an Order to Show Cause Why Defendant Artur Jarayan Should Not be Held in Contempt of Court [Doc. No. 168] by November 8, 2013 by emailing the Court . . . and copying Afremov's counsel."[6] (Order Dated Oct. 24, 2013) [Doc. No. 171 at 2].

In response to the Court's October 24, 2013 Order, Jarayan filed a letter with the Court on October 31, 2013.[7] (Letter to Magistrate Judge Dated Oct. 31, 2013) [Doc. No. 173]. In his

---

[6] The Court's October 24, 2013 Order was prompted by Jarayan's ex parte copying of the Court on an email he sent to the Court-appointed Receiver. (Order Dated Oct. 24, 2013 at 1–2).

[7] Jarayan's October 31, 2013 Letter was sent as an email message to the Court's Chambers inbox and was then submitted by the Court to the Clerk of Court for filing on CM/ECF. The

8

letter, Jarayan explained: the advertising methods he used for selling the Armenian Property, that he was paid in cash at the moment of the completion of the transaction for the sale of the Armenian Property, that he used the money to pay back his creditors, and that he had sold the land before the Receivership Order. (*Id.* at 1–3). Jarayan also claimed that Afremov failed to pay him money that Afremov promised he would pay. (*Id.*). Jarayan expressed his unhappiness with the Court's judgment against him and stated that he was not informed properly about his case and only became aware of the judgment against him by searching for his case on the Internet. (*Id.* at 2–3).

## II. DISCUSSION

In support of his Motion, Afremov stated originally that he was seeking an order from the Court holding Jarayan in civil and criminal contempt for his refusal to cooperate with the Court-appointed Receiver, his failure to turn over the Receivership property, and his admission that he sold property that belonged to the Receivership. (Mot. for Order to Show Cause). Afremov requested the following sanctions be entered against Jarayan: (1) an increasing daily fine until Jarayan complies with the Receivership Order; (2) issuance of a warrant for Jarayan's arrest; and (3) Jarayan's imprisonment until he complies with the Court's Receivership Order and accounts

---

Court received Jarayan's email on October 31, 2013, and then submitted it to the Clerk of Court and the email was filed on CM/ECF on November 14, 2013. Jarayan's email included documents previously filed on the docket as attachments including: (Plaintiff's Supp. Mem. in Supp. of Mot.) [Doc. No. 168]; (Local Rule and Word Count Compliance) [Doc. No. 168-1];(Aff. of Andrew H. Bardwell) [Doc. No. 169]; and (Exs. Attached to Aff. of Andrew H. Bardwell) [Doc. No. 169-1]. Because these documents were already filed on the docket, the Court did not ask the Clerk of Court to file them as exhibits to Jarayan's October 31, 2013 Letter.

for the sales of the Receivership's property. (Afremov's Mem. in Supp. at 4); (Afremov's Supp. Mem. in Supp. at 6–7).[8]

A. **Civil Contempt**

Title 28 U.S.C. § 636(e)(1) provides the Court with the authority to hold a party in contempt. 28 U.S.C. § 636(e)(1) ("A United States magistrate judge . . . shall have within the territorial jurisdiction prescribed by the appointment of such magistrate judge the power to exercise contempt authority as set forth in this subsection"); *Chicago Truck Drivers Union Pension Fund v. Bhd. Labor Leasing*, 207 F.3d 500, 504 (8th Cir. 2000). "Civil . . . contempt is a sanction to enforce compliance with an order of the court or to compensate for losses or damages sustained by reason of noncompliance." *Reed*, 2013 WL 1065371, at *3 (D. Minn. Feb. 13, 2013) *report and recommendation adopted*, 2013 WL 1015343 (D. Minn. Mar. 14, 2013) (quoting *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949); *Chicago Truck Drivers,* 207 F.3d at 505). "Civil contempt may be employed either to coerce the defendant into compliance with a court order or to compensate the complainant for losses sustained, or both." *Chicago Truck Drivers,* 207 F.3d at 505 (citation omitted). Due to the substantiality of the Court's contempt power, "it should be used sparingly and not be lightly invoked." *Hartman v. Lyng*, 884 F.2d 1103, 1106 (8th Cir. 1989) (citing *In re Attorney General of the United States,* 596 F.2d 58, 65 (2d Cir.1979)).

The Court can: (1) levy a fine against a party in contempt to be paid to the court or the moving party; (2) order imprisonment; or (3) award attorneys' fees and costs incurred by the moving party in connection with the contempt proceedings. *United States v. Open Access Tech.*

---

[8] Afremov requested the same relief when the Motion was initially filed and in his supplemental briefing that was filed after Jarayan submitted documents in response to the Court's May 30, 2013 Order.

*Int'l, Inc.*, 527 F. Supp. 2d 910, 912–13 (D. Minn. 2007) (MJD/SRN). "The court's discretion in fashioning an appropriate remedy for contempt includes the power to grant the relief that is necessary to effect compliance with its decree." *Hartman*, 884 F.2d at 1106 (internal quotation omitted). If the court imposes a civil contempt sanction, it must consider four factors: "(1) the harm from noncompliance; (2) the probable effectiveness of the sanction; (3) the financial resources of the contemnor and the burden the sanctions may impose; and (4) the willfulness of the contemnor in disregarding the court's order." *Edeh v. Carruthers*, Case No. 10-cv-2860 (RJK/JSM), 2011 WL 4808194, at *3 (D. Minn. Sept. 20, 2011) *report and recommendation adopted*, 2011 WL 4808191 (citing *United States v. United Mine Workers,* 330 U.S. 258, 303–304 (1947)).

The moving party in civil contempt proceedings must prove by clear and convincing evidence that the person allegedly in contempt violated the court's order. *Open Access Tech. Int'l, Inc.*, 527 F. Supp. 2d at 912 (citing *Chicago Truck Drivers*, 207 F.3d at 505). The moving party, however, does not have to show that the violation was willful. *Id.* (citing *Faegre & Benson*, 367 F. Supp. 2d at 1243). After the moving party satisfies its burden, the burden shifts to the non-moving party to show its inability to comply. *Id.* (citing *Chicago Truck Drivers*, 207 F.3d at 505). The nonmoving party establishes an inability to comply by showing "(1) that they were unable to comply, explaining why categorically and in detail, (2) that their inability to comply was not self-induced, and (3) that they made, in good faith all reasonable efforts to comply." *Id.* (quoting *United States v. Santee Sioux Tribe of Neb.,* 254 F.3d 728, 736 (8th Cir. 2001)).

## B.  Criminal Contempt

While the purpose of civil contempt is remedial and for the complainant's benefit, the purpose of criminal contempt is punitive and for the court's vindication. *Hicks on Behalf of Feiock v. Feiock*, 485 U.S. 624, 631 (1988) (citing *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 441 (1911)). "[T]he same actions by a party can amount to both civil and criminal contempt. It is the nature and purpose of the punishment that is determinative." *Hubbard v. Fleet Mortgage Co.*, 810 F.2d 778, 781 (8th Cir. 1987) (citing *United Mine Workers*, 330 U.S. at 299. Because criminal contempt is a crime, "criminal penalties may not be imposed on someone who has not been afforded the protections that the Constitution requires of such criminal proceedings." *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 826 (1994) (citing *Hicks v. Feiock,* 485 U.S. 624, 632 (1988)).  These protections include double jeopardy, right to notice of charges, assistance of counsel, to present a defense, privilege against self-incrimination, right to proof beyond a reasonable doubt, and the right to a jury trial for serious criminal contempt that entails imprisonment of more than six months.  *Id.* at 826–27 (citations omitted).  "In contrast, civil contempt sanctions, or those penalties designed to compel future compliance with a court order, are considered to be coercive and avoidable through obedience, and thus may be imposed in an ordinary civil proceeding upon notice and an opportunity to be heard." *Id.*  Federal Rule of Criminal Procedure 42 governs criminal contempt and sets forth requirements for criminal contempt proceedings. *See* Fed. R. Crim. P. 42.

Afremov acknowledges that the Court cannot impose criminal sanctions without affording Jarayan the protections he is due in a criminal prosecution, thus, Afremov asks the Court to "refer . . . Jarayan's criminal contempt to the U.S. Attorney's office for prosecution." (Afremov's Mem. in Supp. at 6); (Afremov's Supplemental Mem. in Supp. at 6).  Afremov seeks

the imposition of criminal contempt sanctions against Jarayan because Jarayan has "exhibited his complete disregard and lack of respect for the Court" through his violation of the Court's July 26, 2012 Receivership Order. (Afremov's Mem. in Supp. at 5).

### C. Violations of the Court's Order

For contempt sanctions to be warranted, Afremov must first establish by clear and convincing evidence that Jarayan violated the Court's Receivership Order. In support of his Motion, Afremov argued originally that Jarayan failed to cooperate with the Receiver and instead Jarayan transferred the Armenian Property to a third party in willful violation of the Court's Receivership Order.[9] (Afremov's Mem. in Supp. at 1). Afremov also characterized Jarayan's sale of the Armenian Property as rendering his previous statements to the Court that he was not intending to sell the Armenian Property a lie. (*Id.* at 2–3). Afremov argued that Jarayan was in violation of the Receivership Order because he had not turned over the Armenian Property or any documents or records concerning AM Plaza and its assets. (*Id.* at 1–3). Afremov argued that the proceeds from Jarayan's sale of the Armenian Property needed to be accounted for and belonged to the Receivership. (*Id.* at 5). Due to what Afremov characterized as Jarayan's willful disobedience of the Court's Receivership Order, Afremov argued civil and criminal contempt sanctions were merited. (*Id.*). Because there was already a judgment against Jarayan in excess of $3,000,000, Afremov argued that imprisonment of Jarayan pending his compliance with the Court's Receivership Order was likely the only way to compel Jarayan's compliance. (*Id.*). Afremov noted in his Memorandum in Support of his Motion that there was confusion surrounding when Jarayan sold the Armenian Property. (*Id.*. at 2).

---

[9] It has subsequently been confirmed by documents Jarayan produced that the Armenian Property was sold shortly *before* the Receivership Order. (Afremov's Supplemental Mem. in Supp. at 1–3).

13

In response to the Court's May 30, 2013 Order, providing Jarayan with a final opportunity to comply with the Court's Receivership Order, Jarayan produced documents that Afremov conceded showed a sale of the Armenian Property *before* the Court's Receivership Order for approximately $307,000. (Supplemental Mem. in Supp. at 1–3). Afremov explained that Jarayan produced purchase agreements that established: (1) that Jarayan sold the Armenian Property on July 19, 2012 (before the Receivership Order); (2) Jarayan received approximately $307,000 for the sale of the Armenian Property; and (3) the Armenian Property was transferred to Lilia Aslanyan. (*Id.* at 3).

Despite clarification that the Armenian Property was sold *before* the Receivership Order was entered, Afremov now argues essentially that Jarayan is still in contempt of court because Jarayan failed to produce documents responsive to all of the listed documents in the Court's May 30, 2013 Order. (*Id.* at 1–4). Afremov argues that the documents Jaryan produced in response to the Court's May 30, 2013 Order did not show how the purchase price was paid or what was done with the proceeds and no documents were produced that related to the marketing or advertising for the sale of the Armenian Property, all of which were required by the May 30, 2013 Order. (*Id.*). Afremov argues that Jarayan did not make a good faith effort to comply with the Court's May 30, 2013 Order and instead just "submitted irrelevant documents related to other claims in the lawsuit that had already been decided in [Afremov's] favor." (*Id.* at 2). Afremov argues that Jarayan "made a mockery of the power of the Court" by retreating to Armenia when his fraud was discovered, selling the Armenian Property shortly before the Receivership Order, and refusing to account for the sale's proceeds. (*Id.* at 5).

Afremov now requests that Jarayan be held in contempt on a different basis than originally asserted. *Compare* (Mot. to Show Cause) and (Afremov's Mem. in Supp. of Mot. to

Show Cause) *with* (Afremov's Supplemental Mem. in Supp.). Currently, Afremov's arguments focus on largely technical deficiencies in Jarayan's responses to the Court's May 30, 2013 Order. *See* (Afremov's Supplemental Mem. in Supp.). Afremov, however, is attempting to avoid the spirit of the Court's May 30, 2013 Order, which was to have Jarayan comply with the Receivership Order. In addition, the Court's May 30, 2013 Order clearly stated that it was ordering Jarayan to comply with the Court's Receivership Order. (Order Dated May 30, 2013). The Order goes on to list documents that Jarayan is ordered to produce to ensure compliance with the Court's Receivership Order. (*Id.*). The spirit of the Court's May 30, 2013 Order was to ensure compliance with the Receivership Order and the documents Jarayan was ordered to produce were listed in order to achieve compliance with that Order. Afremov's technical arguments ignore Jarayan's compliance with the spirit of the May 30, 2013 Order.

The Court does not find that Afremov has established by clear and convincing evidence that Jarayan violated the Court's Receivership Order or its May 30, 2013 Order. First, Afremov concedes that Jarayan did produce in response to the Court's May 30, 2013 Order purchase agreements establishing that the Armenian Property was sold to Lilia Aslanyan *before* the Court's Receivership Order for approximately $307,000. (Supplemental Mem. in Supp. at 1–3). The Court believes that this satisfies the Court's Receivership Order, which required Afremov to surrender any Receivership property in his possession and reasonably cooperate with the Receiver. (Receivership Order). In addition, Jarayan's document production in response to the May 30, 2013 Order also satisfied the spirit of the May 30, 2013 Order which was to ensure

compliance with the Receivership Order. *See* (Order Dated May 30, 2013). Thus, Jarayan is not in violation of the Court's Receivership Order or the May 30, 2013 Order.[10]

Even considering Afremov's arguments concerning technical failures of Jarayan's submissions, the Court is unconvinced that Afremov can establish by clear and convincing evidence that Jarayan has not produced the documents required by the Court's May 30, 2013 Order. First, Afremov contends that Jarayan did not produce any documents that related to the marketing or advertising for the sale of the Armenian Property. (Supplemental Mem. in Supp. at 1–2). The Court notes, however, that Jarayan's October 31, 2013 Letter to the Court explains that the Armenian Property was advertised in Armenian newspapers and by a sign on the property. (Oct. 31, 2013 Letter at 1). Jarayan states that he does not have the advertisements, but he explains how Afremov can get the advertisements from the Armenian State National Library. (*Id.*). Even though this Letter was filed after Afremov's supplemental memorandum,

---

[10] Afremov may dispute whether Jarayan actually used the money he received for the purchase of the Armenian Property to pay his relatives in cash for debts. There is little the Court can do to force Jarayan to prove that these transactions actually took place. The Court's May 30, 2013 Order required that Jarayan:

> [P]rovide the following information and any supporting documentation . . . . An accounting of all proceeds received for the sale of the Armenian Property, including any subsequent transactions involving the proceeds (payment of other debts, purchase of other property, savings, investment, etc.)[, and] To the extent Jarayan used the proceeds to pay down his own debts, documentation evidencing the date the debt was incurred, what it was incurred for, to whom the debt was owed, any relevant interest or penalty payments that attached to the debt, original due date of the debt, date the debt was paid with the sale proceeds, to whom the debt was paid, currency in which payment was tendered, how payment was tendered (serial payments, loan agreements, any relevant interest agreements, wire transfer, cash, check, etc.).

In response, Jarayan asserted that he used the money to pay debts in cash transactions for which there was no supporting documentation. (Email Message Between Jarayan and Receiver Dated June 6, 2013, Ex. 1F, Attached to Aff. of Andrew Bardwell) [Doc. No. 169-1 at 9]. Although not providing the breadth of information sought by the Court's May 30, 2013 Order, Jarayan's assertions nonetheless satisfy the Order's requirements.

the Court finds Jarayan's responses good faith attempts to comply with what Afremov alleged to be missing from his submitted documents.

Second, concerning Afremov's argument about the proceeds of the sale, Jarayan stated in an email to the Receiver that he used the money from the sale of the Armenian Property to pay his debts and living expenses and that he did not have additional documents because these were paperless transactions, as is customary in Armenia. (Email Message Between Jarayan and Receiver Dated June 6, 2013, Ex. 1F at 9, Attached to Aff. of Andrew Bardwell). In his October 31, 2013 Letter to the Court, Jarayan again explained that he was paid in cash for the sale of the Armenian Property. (Oct. 31, 2013 Letter at 1). Jarayan explains that he paid back relatives and friends with some of the money he received from the sale of the Armenian Property. (*Id.* at 2). Jarayan, thus, contends that no documents exist evidencing the debts he paid with the money from the sale of the Armenian Property. *See* (Email Message Between Jarayan and Receiver Dated June 6, 2013, Ex. 1F at 9, Attached to Aff. of Andrew Bardwell).

In light of Jarayan's submissions to the Receiver and Afremov in response to the Court's May 30, 2013 Order and his explanations in his October 31, 2013 Letter to the Court, the Court finds that there is not clear and convincing evidence that Jarayan is in contempt of court. Although Jarayan has not complied with the Court's orders with technical precision, the Court believes that Jarayan's responses to the Court's orders have been sufficient especially in light of the fact that he is proceeding *pro se*. The Court, thus, finds that Jarayan is not in civil contempt of court. Moreover, the Court does not find it appropriate to forward the case to the U.S. Attorney for prosecution for criminal contempt.

17

### III. RECOMMENDATION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Afremov's Motion for an Order to Show Cause Why Defendant Artur Jarayan Should Not Be Held in Contempt of Court for Violating the Court's July 26, 2012 Receivership Order [Doc. No. 150] be **DENIED**; and

2. Jarayan not be held in civil or criminal contempt of court.

Dated: November 26, 2103

>*s/ Steven E. Rau*
>STEVEN E. RAU
>United States Magistrate Judge

Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court and serving all parties by **December 13, 2013**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.