UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Michael Afremov,<br><br>             Plaintiff,<br><br>v.<br><br>Artur Jarayan and Object of Vertu, LLC,<br><br>             Defendants,<br><br>v.<br><br>John Atzbach,<br><br>             Third-Party Defendant. | Case No. 11-cv-313 (SRN/SER)<br><br>**MEMORANDUM OPINION<br>AND ORDER** |

William R. Skolnick, Rolin L. Cargill, and Andrew H. Bardwell, Skolnick and Shiff, PA, 2100 Rand Tower, 527 Marquette Avenue South, Minneapolis, Minnesota 55402, for Plaintiff.

Artur Jarayan, pro se Defendant.

SUSAN RICHARD NELSON, United States District Judge

### I.      INTRODUCTION

This matter is before the Court on Plaintiff's Objections [Doc. No. 175] to United States Magistrate Judge Steven E. Rau's November 26, 2013, Report and Recommendation ("R & R") [Doc. No. 174]. The Magistrate Judge recommended that Plaintiff's Motion for an Order to Show Cause Why Defendant Artur Jarayan Should Not Be Held in Contempt of Court for Violating the Court's July 26, 2012 Receivership Order [Doc. No. 150] be denied. (Report and Recommendation, dated November 26, 2013 ("R & R"), at 18 [Doc. No. 174].)

For the reasons set forth below, Plaintiff's objections are sustained in part, and overruled in part, and the Court adopts the R & R in part.

## II.   BACKGROUND

The factual and procedural background of Plaintiff's case is well documented in the Magistrate Judge's R & R and is incorporated herein by reference.[1]  In this lawsuit, Plaintiff Michael Afremov ("Afremov") seeks reimbursement for funds provided to Defendants Artur Jarayan ("Jarayan") and Object of Vertu, LLC ("Vertu") (collectively "Defendants"), for the development of a casino in Armenia (the "Casino Project").[2] Afremov gave Jarayan $1,720,000 for the purpose of acquiring land.  (Compl. ¶ 15 [Doc. No. 1].)  In October 2008, Afremov, Jarayan, and Vertu signed a document called the "AM Plaza Agreement" to form AM Plaza, LLC, the entity that would own the land acquired for the Casino Project.  (Id. ¶¶ 21–22.)  After the property was purchased, the Casino Project failed to progress.  (See id. ¶¶ 26–29.)  Plaintiff filed this lawsuit, and Defendants filed an Answer, Counterclaim, and Third-Party Complaint [Doc. No. 22].

On May 22, 2012, Afremov moved the Court for an order appointing a receiver to oversee the dissolution of AM Plaza, LLC, and the sale of the property purchased for the Casino Project [Doc. No. 70].  At the hearing on June 18, 2012, both parties agreed that the land at issue should be sold and the proceeds held until the litigation is resolved.  (See

---

[1]   The Court recites background facts only to the extent necessary to rule on Plaintiff's objections.

[2]   Third-Party Defendant John Atzbach submitted a Memorandum in Response to Plaintiff's Motion for Order to Show Cause [Doc. No. 160], in which he stated that he takes no position with respect to Afremov's motion.  Therefore, the Court will focus only on the facts relating to Afremov, Jarayan, and Vertu.

Order dated July 26, 2012, at 4 [Doc. No. 88].)  On July 26, 2012, this Court granted Afremov's motion and appointed a receiver.  (See id. at 7.)  The Court's Order ("Receivership Order") instructed Jarayan and Vertu to "immediately":

    a.    Surrender to the control of the Receiver all property belonging to or in the possession, custody, or control of AM Plaza, including but not limited to deposit accounts, securities accounts, promissory notes, deeds, mortgages, contracts, leases, checks, instruments, documents of title, accounts receivable, owned and leased real property, owned and leased office space, owned and leased office equipment and supplies, computer software, and all books, records, and electronically stored data;

    b.    Provide the Receiver with all keys and other access devices, including password codes, relating to AM Plaza or any property belonging to or in the possession, custody, or control of AM Plaza;

    c.    Comply with any direction of the Receiver to endorse and deliver to the Receiver all checks and other payments of monies currently in or hereafter coming into AM Plaza's possession or control; and

    d.    Reasonably provide cooperation and assistance to the Receiver so as to enable the Receiver to assume and discharge his duties under this Order and applicable law, including cooperating by voluntarily disclosing all financial and other information to the Receiver concerning AM Plaza.

(Id. at 7–8.)

Defendants subsequently discharged their counsel, and the Magistrate Judge allowed their counsel to withdraw.  (See Order dated Sept. 6, 2012, at 10–12 [Doc. No. 118].)  The Magistrate Judge instructed Jarayan that if he failed to inform the Court of how he intended to proceed with representation, the Court would recommend that default be entered against him.  (See id. at 10.)  Likewise, Vertu was allowed time in which to obtain substitute counsel, or be subject to the same consequences.  (Id. at 11.)  Defendants failed to respond, and this Court ordered that default be entered [Doc. No. 135].)  Around this time, Afremov

also moved for partial summary judgment [Doc. No. 128].  Afremov then moved for default judgment [Doc. No. 141].  On October 24, 2012, this Court granted Plaintiff's motions and ordered that judgment be entered against Defendants in the amount of approximately $3.26 million.  (See Order dated Oct. 24, 2012, at 10–11 [Doc. No. 146].)

The Receivership Order remained in effect after judgment was entered.  (Id. at 11.)  According to the receiver, the only assets of AM Plaza consisted of real property located in Armenia that had been sold by Jarayan.  (Bremer Aff. ¶ 2 [Doc. No. 155].)  Jarayan did not provide the receiver with any documentation regarding the property, but he did inform the receiver that he had used the proceeds to pay down his own debts.  (Id. ¶¶ 7, 11 & Ex. C.)  On March 22, 2013, Afremov filed a motion for an order to show cause why Jarayan should not be held in contempt of court for violating the Receivership Order [Doc. No. 150].  Afremov argued that Jarayan willfully disobeyed the Order and that the Court should exercise its civil and criminal contempt powers over Jarayan.  (See Pl.'s Mem. in Supp. of Mot. for an Order to Show Cause Why Def. Jarayan Should Not Be Held in Contempt of Court, at 1, 4 [Doc. No. 153].)  The motion was referred to the Magistrate Judge pursuant to 28 U.S.C. § 636 [Doc. No. 157].  While Jarayan did not file a written response, he did appear by telephone at the hearing.  (See Bardwell Aff., Ex. 1 (Tr. of May 30, 2013, Mot. Hrg.) 2:6–7 [Doc. No. 176].)

On May 30, 2013, the Magistrate Judge issued an Order staying and holding in abeyance Afremov's motion ("May 30 Order").  (Order dated May 30, 2013, at 5 [Doc. No. 162].)  The Magistrate Judge ordered Jarayan to provide the following information and

documentation within ten days of service in order to be in compliance with the Receivership Order:

    a.    Ownership of the Armenian Property

        i. Any and all documents pertaining to the ownership of the Armenian Property after Jarayan's purchase, including but not limited to title, title transfers, and any encumbrances against the Armenian Property.

    b.    Regarding the Sale of the Armenian Property

        i.    Any and all documents pertaining to the sale of the Armenian Property, including but not limited to advertisements placed for the Armenian Property, sales documents, purchasing documents, relevant loans, and purchase agreements or contracts.

        ii.    Any and all documents containing the seller's identity, purchaser's identity, amount or consideration provided in exchange for the Armenian Property, description of the property sold, currency in which payment was tendered, and how the purchaser tendered payment (serial payments, loan agreements, any relevant interest agreements, wire transfer, cash, check, etc.).

    c.    Regarding the Proceeds from the Sale of the Armenian Property

        i.    An accounting of all proceeds received for the sale of the Armenian Property, including any subsequent transactions [involving] the proceeds (payment of other debts, purchase of other property, savings, investment, etc.).

        ii.    To the extent Jarayan used the proceeds to pay down his own debts, documentation evidencing the date the debt was incurred, what it was incurred for, to whom the debt was owed, any relevant interest or penalty payments that attached to the debt, original due date of the debt, date the debt was paid with the sale proceeds, to whom the debt was paid, currency in which payment was tendered, how payment was tendered (serial payments, loan agreements, any relevant interest agreements, wire transfer, cash, check, etc.).

(Id. at 6–7.)

On August 1, 2013, Afremov sent a letter to the Magistrate Judge, in which he stated that Jarayan had provided documentation that the property had been sold prior to entry of the Receivership Order. (Order dated Aug. 20, 2013, at 2 [Doc. No. 164].) The Magistrate Judge again ordered the motion to be stayed and held in abeyance and requested that Afremov re-file his motion for an order to show cause in light of the additional facts provided by Jarayan. (Id.)

On October 21, 2013, Afremov filed a supplemental memorandum in support of his motion [Doc. No. 168], along with a series of emails between Jarayan and the receiver and translations of documents that Jarayan provided to the receiver [Doc. No. 169-1]. As noted by Afremov, these documents show that (1) Jarayan sold the property on July 19, 2012, shortly before the Receivership Order was entered; (2) Jarayan received approximately $307,000 for the property; (3) the property was transferred to Lilia Aslanyan; (4) Jarayan received cash for the property; and (5) Jarayan used the proceeds to pay debts to his creditors. (See Pl.'s Supplemental Mem. in Supp. of Mot. for an Order to Show Cause Why Def. Jarayan Should Not Be Held in Contempt of Court ("Pl.'s Supplemental Mem.") at 3 [Doc. No. 168].) According to Jarayan, there is no supporting documentation for his disbursement of the proceeds. (See Bardwell Aff., Ex. 1F [Doc. No. 169-1].) Afremov argued that this information "did not come close to satisfying what the Court demanded" because Jarayan did not produce documents regarding the advertising or marketing for the sale of the property or documentation (rather than statements in emails) of the method of

6

payment and disposition of proceeds. (Pl.'s Supplemental Mem. at 1–2 [Doc. No. 168].) Therefore, Afremov maintained his assertion that both criminal and civil contempt are warranted. (See id. at 6.) He argued that Jarayan should be subject to an increasing daily fine and imprisonment until he complies with the Receivership Order. (See id. at 6–7.) Afremov also argued that the Court should refer the matter to the U.S. Attorney for prosecution and imposition of criminal penalties. (Id. at 6.)

On October 31, Jarayan responded by letter to the Court. He provided the following information: (1) he advertised the property through real estate companies and newspapers and with a sign on the land; (2) the property was paid for with cash; (3) the money was used to pay back creditors; and (4) the land was sold prior to the Court appointing the receiver. (See Email from A. Jarayan to Mag. J. Rau at 1–2 [Doc. No. 173].)

The Magistrate Judge issued his R & R on November 26, 2013. He concluded that Afremov had not established by clear and convincing evidence that Jarayan violated the Receivership Order or the May 30 Order. (See R & R at 15 [Doc. No. 174].) First, he found that Jarayan's production of purchase agreements establishing that the property was sold prior to entry of the Receivership Order to Lilia Aslanyan for approximately $307,000 satisfied the Receivership Order; and that Jarayan's document production satisfied the spirit of the May 30 Order, which was to ensure compliance with the Receivership Order. (Id. at 15–16.) Second, the Magistrate Judge found that Jarayan's emails to the receiver and October 31 letter to the Court provided much of the information that Afremov argued was

missing from the document production. (See id. at 16–17.) Therefore, the Magistrate Judge determined that neither civil nor criminal contempt is warranted. (Id. at 17.)

### III. DISCUSSION

#### A. Standard of Review

The district court reviews de novo those portions of the R & R to which an objection is made and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C); accord D. Minn. LR 72.2(b). As for the underlying matter, the grant or denial of a contempt order is within the Court's discretion. See Indep. Fed'n of Flight Attendants v. Cooper, 134 F.3d 917, 920 (8th Cir. 1998) (citations omitted) (stating that the Eighth Circuit "review[s] both the grant and the denial of a contempt order for abuse of discretion"). "Because the contempt power is a substantial one, it should be used sparingly and not be lightly invoked." Hartman v. Lyng, 884 F.2d 1103, 1106 (8th Cir. 1989) (citation omitted).

The civil contempt power is used to obtain compliance with court orders and to compensate individuals for harm resulting from noncompliance. Id. (citing United States v. United Mine Workers of Am., 330 U.S. 258, 303–04 (1947)). Thus, a conditional penalty, such as a fine or imprisonment that can be avoided or ended upon compliance with the court's order, is civil in nature because it is remedial and designed to compel the contemnor's action. See Hicks v. Feiock, 485 U.S. 624, 631–34 (1988). "A party seeking civil contempt bears the initial burden of proving, by clear and convincing evidence, that the alleged contemnors violated a court order." Chi. Truck Drivers v. Bhd.

Labor Leasing, 207 F.3d 500, 505 (8th Cir. 2000) (citing Indep. Fed'n of Flight Attendants, 134 F.3d at 920). If the moving party meets his burden, the burden then shifts to the alleged contemnors "to show an inability to comply." Id. (citing United States v. Rylander, 460 U.S. 752, 757 (1983)).

The same actions that amount to civil contempt can also amount to criminal contempt. Hubbard v. Fleet Mortg. Co., 810 F.2d 778, 781 (8th Cir. 1987) (citing United Mine Workers, 330 U.S. at 299). Penalties for criminal contempt, however, are used to vindicate the court's authority. Id. at 781–82 (citing United Mine Workers, 330 U.S. at 302–04). Thus, an unconditional penalty, such as a definite term of imprisonment or fine, is criminal in nature because it is punitive. See Hicks, 485 U.S. at 631–35. Based on the punitive nature of such penalties, proof beyond a reasonable doubt of the alleged contemnor's violation must be found in a criminal contempt proceeding. See id. at 632 (citations omitted).

    **B.**    **Objections**

Afremov filed his objections to the R & R on December 13, 2013.[3] He asserts that the Magistrate Judge erred in not holding Jarayan in contempt. (See Pl.'s Objections to Magistrate Rau's Nov. 26, 2013 R & R to Deny Pl.'s Mot. for an Order to Show Cause ("Objs.") at 1 [Doc. No. 175].) First, Afremov argues that he has demonstrated Jarayan's contempt by clear and convincing evidence. (See id. at 8–10.) Second, he argues that

---

[3] According to Afremov's Affidavit of Service [Doc. No. 177], Jarayan was served with a copy of Afremov's objections on December 13, 2013. Pursuant to Local Rule 72.2, Jarayan had fourteen days from that date to respond to the objections. Jarayan has not filed a response, and the deadline for doing so has passed.

Jarayan has not met his burden of showing an inability to comply with the Receivership Order.[4] (See id. at 10–12.) Afremov argues primarily for remedial relief (e.g., "increasing daily sanctions until Jarayan complies with the Receivership Order" and "a jail sentence that can be purged only upon compliance with the Receivership Order"), (id. at 13), but he asserts that a finite term of imprisonment also would be appropriate, (see id. at 8 n.1). While this Court agrees that Afremov has demonstrated by clear and convincing evidence Jarayan's noncompliance with a Court Order, this Court also agrees with the Magistrate Judge that neither civil nor criminal contempt penalties are warranted at this time.

### 1. Violation of a Court Order

Afremov first objects to the Magistrate Judge's finding that Afremov did not demonstrate Jarayan's violation of the Receivership Order by clear and convincing evidence. (See Objs. at 1, 8 [Doc. No. 175].) Afremov argues that he met his burden by establishing that: (1) the property at issue was an asset of AM Plaza and property of the receivership; (2) the Receivership Order required Jarayan to turn over AM Plaza's assets and to cooperate with the receiver; (3) Jarayan sold the property before the Court issued the Receivership Order; (4) Jarayan used the proceeds from the sale to pay off his personal debts but has no supporting documentation and has not turned any assets over to

---

[4] Afremov also argues that the Magistrate Judge erred in stating that Afremov's supplemental brief on this issue seeks relief based on different grounds than originally asserted in support of his motion. (See Objs. at 12–13 [Doc. No. 175].) Because this Court finds that Jarayan has failed to comply with the Receivership Order, this issue is moot.

the receiver; and (5) Jarayan has not cooperated with the receiver and did not produce documents until Afremov filed his motion for an order to show cause. (See id. at 8–10.)

These facts constitute clear and convincing evidence that Jarayan violated the Receivership Order. First, as Afremov argues, the facts show that Jarayan sold the property at issue and has failed to turn over any property to the receiver. While the sale may have occurred prior to the Court issuing the Receivership Order, the failure to turn over the property (or proceeds) nevertheless violates the Order. The fact that Jarayan may have been unable to comply with the Order (because, for example, he was no longer in possession of the property or proceeds) is irrelevant to this determination and must be established by Jarayan as discussed in the next section.

Second, the Court's May 30 Order required Afremov to provide "[a]n accounting of all proceeds received for the sale of the Armenian Property," including:

> To the extent Jarayan used the proceeds to pay down his own debts, documentation evidencing the date the debt was incurred, what it was incurred for, to whom the debt was owed, any relevant interest or penalty payments that attached to the debt, original due date of the debt, date the debt was paid with the sale proceeds, to whom the debt was paid, currency in which payment was tendered, how payment was tendered (serial payments, loan agreements, any relevant interest agreements, wire transfer, cash, check, etc.).

(Order dated May 30, 2013, at 6–7 [Doc. No. 162].) Jarayan has asserted only that the money was transferred to "his creditors," without supporting documentation. This minimal information is not enough to satisfy the May 30 Order. Based on the foregoing, the Court finds that Afremov has demonstrated by clear and convincing evidence that Jarayan has violated the Court's Orders.

## 2. Inability to Comply

Afremov next argues that Jarayan has not met his burden of showing an inability to comply with the Receivership Order.[5] (See Objs. at 10–12 [Doc. No. 175].) To satisfy this burden, an alleged contemnor "must establish: (1) that [he was] unable to comply, explaining why categorically and in detail; (2) that [his] inability to comply was not self-induced; and (3) that [he] made in good faith all reasonable efforts to comply." Chi. Truck Drivers, 207 F.3d at 506 (internal quotations and citations omitted). Afremov argues that: (1) Jarayan has made only a "naked assertion" that he spent the proceeds of the sale, without any evidence detailing the specifics of the expenditures, and that he has not established an inability to repay the receivership through other means; (2) to the extent that an alleged inability to pay is based on Jarayan's use of the money to pay his own debts, the inability to pay was self-induced; and (3) Jarayan's failure to provide any information until after Afremov moved for an order to show cause demonstrates Jarayan's lack of good faith. (Objs. at 10–11 [Doc. No. 175].)

While Afremov has presented his arguments on this issue, the Court finds that Jarayan has not sufficiently addressed whether he had an inability to comply with the Court's Receivership Order and that it is appropriate to provide Jarayan with one last opportunity to respond. Therefore, to the extent Afremov requests an order to show cause why Jarayan should not be held in contempt for violating the Court's Receivership

---

[5] The Magistrate Judge did not analyze whether Jarayan had the ability to comply with the Receivership Order, instead basing his R & R on the lack of evidence of a violation of the Receivership Order. (See R & R at 13–17 [Doc. No. 174].)

Order, his motion is granted as detailed herein.[6] However, to the extent Afremov argues that the Court should hold Jarayan in civil and criminal contempt, his motion is denied without prejudice. Accordingly, within 21 days of service of a copy of this Order upon Jarayan, Jarayan must either (1) comply with the Receivership Order by turning over to the receiver $307,000—the amount Jarayan received when he sold the property at issue; or (2) retain a certified public accountant to conduct a financial accounting of Jarayan's assets and file with the Court a sworn declaration by the accountant demonstrating Jarayan's inability to pay the $307,000 debt, regardless of whether the actual proceeds received from the sale of the property at issue have been disposed of. In the latter case, the parties are ordered to contact Magistrate Judge Rau's chambers to schedule an order to show cause hearing, at which Jarayan's inability to comply with the Receivership Order will be evaluated under the standard articulated herein.

**THEREFORE, IT IS HEREBY ORDERED THAT:**

1. Plaintiff's Objections to Magistrate Judge Rau's November 26, 2013 Report and Recommendation to Deny Plaintiff's Motion for an Order to Show Cause [Doc. No. 175] are **OVERRULED in part and SUSTAINED in part**;

2. The Court **ADOPTS in part, and DECLINES to adopt in part**, the Magistrate Judge's Report and Recommendation [Doc. No. 174];

3. Plaintiff's Motion for an Order to Show Cause Why Defendant Artur Jarayan Should Not Be Held in Contempt of Court for Violating the Court's July 26, 2012 Receivership Order [Doc. No. 150] is **GRANTED in part and DENIED without prejudice in part**, as detailed herein; and

---

[6] An order to show cause has not yet been issued in this case. Rather, the Magistrate Judge stated in the R & R that he went forward with deciding the ultimate issue of whether Jarayan should be held in contempt because the parties have proceeded in this case as if an order to show cause was issued. (R & R at 5 n.5 [Doc. No. 174].)

4. Plaintiff shall serve a copy of this Order on Jarayan via email by the end of the day on January 17, 2014.

Dated:  January 13, 2014                         s/Susan Richard Nelson
                                                 SUSAN RICHARD NELSON
                                                 United States District Judge